UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL DEAN SMITH,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, ACTING COMM'R OF SOCIAL SECURITY;<br><br>　　　　　　Defendant. | 4:13-CV-04058-LLP<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

Pending before the court is plaintiff Michael Dean Smith's motion for attorney's fees.  See Docket No. 31.  This motion has been referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B), F<small>ED</small>. R. C<small>IV</small>. P. 54(d)(2)(D) and 72(b), and the October 16, 2014, standing order of the Honorable Karen E. Schreier, district court judge.

## FACTS

In March 2000, Mr. Smith was involved in a significant work-related accident where he fell from about 16 feet and landed on a rock on the left side of his head.  See Smith v. Astrue Civ. No. 10-4131 ("Smith I"), Docket No. 19 at p. 4 (D.S.D. Aug. 24, 2011).  He first filed an application for disability insurance benefits and supplemental security income in July 2000.  Id. at p. 2.  The Social Security Administration ("Commissioner") denied the initial application and Mr. Smith pursued it no further.  Id.

In December 2002, Mr. Smith filed a second application which was denied initially and upon reconsideration.  Id.  An evidentiary hearing was held before an Administrative Law Judge ("ALJ") in October, 2004.  Id.  A written decision denying Mr. Smith's second claim was filed January 20, 2005.  Id.  Mr. Smith did not seek review of this decision before the Appeals Council.  Id.

In 2006, Mr. Smith filed his third application for disability benefits.  Id.  He alleged that he had been disabled since his March 2000 accident.  Id. at p. 3.  Mr. Smith alleged the conditions which rendered him disabled were constant and debilitating pain, especially in the low back; double vision; a traumatic brain injury and resulting memory loss; an inability to grip with his left hand; and carpel tunnel in his left wrist.  Id.  The Commissioner denied this claim initially and on reconsideration.  Id.  An evidentiary hearing was held and the ALJ granted benefits from July 14, 2006, to October 1, 2007, but denied benefits both before and after this period.  Id.  Mr. Smith sought review before the Appeals Council, submitting additional evidence, but the Appeals Council denied review.  Id. at p. 4.  Thereafter, Mr. Smith sought review in this court.  Id.

This court reversed.  Id. at p. 34.  The reasons for reversal were:

1.      The ALJ failed to consult Mr. Smith's treating physician about when Mr. Smith's degenerative disc disease became disabling, instead substituting the ALJ's own opinion that Mr. Smith's disease did not become disabling until it was documented in a July 2006 MRI.  Id. at p. 28.

2.      The ALJ failed to consider Mr. Smith's double-vision condition.  Id. at p. 29.

3.     The ALJ determined Mr. Smith became able to work in October 2007 by failing to apply the Polaski factors consistently to Mr. Smith's testimony about his symptoms and abilities from the time of the March 2000 accident up through the hearing date.  Id. at pp. 33-34.

Based upon these errors, the court remanded pursuant to sentence four, 42 U.S.C. § 405(g).  Id. at pp. 34-35.  See also Smith I, Docket No. 20 (D.S.D. Sept. 20, 2011).  In the course of issuing its opinion, the court opined several times that Mr. Smith's claim for benefits for the period which predated January 21, 2005, was not before the court or the agency due to *res judicata* grounds.  See Smith I, Docket No. 19 at p. 2 n.2, p. 5 n.4, p. 27, p. 29, and p. 30 n.20.  It is clear that what the court contemplated when it remanded was that the ALJ would render a new opinion based on consideration and discussion of the evidence in the administrative record already.  But that is not what happened.

Instead, the ALJ notified Mr. Smith that it would hold another evidentiary hearing and that Mr. Smith was welcome to submit additional evidence concerning his April 18, 2006 application for disability benefits.  See Administrative Record (AR) at pp. 545-50.  At the hearing, a substantial amount of new evidence was received.  See Smith v. Colvin ("Smith II), Docket No. 25 at p. 3 (D.S.D. June 16, 2014).  Despite the new evidence, the ALJ refused to reopen Mr. Smith's 2002 application on *res judicata* grounds and also based on the law of the case.  Id.; see also AR 405.

Mr. Smith urged the ALJ to reopen his December 2002 application, citing ineffectiveness of his counsel and the fact that he was incarcerated at the time he should have appealed the adverse decision from the Commissioner on that earlier

application.  See AR 406.  The ALJ specifically refused Mr. Smith's request to reopen his December 2002 disability application, finding that there were no grounds for doing so.  Id.

The ALJ awarded benefits beginning on January 21, 2005 forward, but would not award benefits back to the date of Mr. Smith's work accident on the basis of his 2002 disability application.  See AR 406, 410.  Mr. Smith exhausted his administrative remedies and then appealed the Commissioner's administrative decision to this court.  Smith II.

The magistrate judge ruled against Mr. Smith in his administrative appeal, recommending that the decision of the Commissioner be affirmed.  Smith II, Docket No. 25 at p. 9.  The district judge reversed, entering an order instructing that benefits be awarded to Mr. Smith.  Smith II, Docket No. 29 at p. 4.

In its ruling, the magistrate judge relied not only on the law of *res judicata*, but also on a species of waiver, pointing out that in Smith I, Mr. Smith had acknowledged that administrative *res judicata* prevented *payment of benefits* before January 20, 2005, although arguing that medical evidence from before that date could and should be considered.  See Smith II, Docket No. 25 at p. 3, pp. 7-9 (citing Mr. Smith's brief in Smith I, Docket No. 18 at p. 5).  The magistrate judge also rejected Mr. Smith's argument that the Commissioner's decision not to reopen the 2002 application should be reversed, noting that the district court was without jurisdiction to reopen a prior application unless Mr. Smith made a "colorable" constitutional challenge to the decision or the Commissioner had "constructively reopened" the application by addressing the earlier application on the merits.  Id. at pp. 5-7.

4

In its ruling, the district judge noted that the language in the court's opinion in Smith I regarding *res judicata* was *dicta*.  See Smith II, Docket No. 29 at p. 1.  Further, the court held that *res judicata* did not apply because, upon remand, new and material evidence was received by the ALJ at the hearing.  Id. at p. 2.  On the issue of district court review of the Commissioner's denial of a request to reopen an application, the court held that the constitutional-claim prong did not apply.  Id. at p. 3.  Finally, the district court noted that the new evidence was received within the four-year window applicable to the constructive reopening doctrine.[1]  Id.  On the basis of the new evidence, which included testimony that Mr. Smith had had a severe psychological listing-level impairment since the date of his March 2000 work injury, the district court awarded benefits outright from March 2, 2002, forward to January 20, 2005 (the date the ALJ had already awarded benefits).  Id. at pp. 3-4.

Mr. Smith now moves for an award of attorney's fees and costs as the prevailing party under 28 U.S.C. § 2412, the Equal Access to Justice Act ("EAJA").  See Smith II, Docket No. 31.  The Commissioner resists the request, asserting that its position both at the agency and at the district court levels was "substantially justified."  Id. at Docket No. 33.

## DISCUSSION

---

[1] This appears to be in error.  The second application was denied January 20, 2005.  Mr. Smith applied for benefits a third time April 18, 2006.  He did not seek to reopen at that time, nor on judicial review before this court in Smith I.  See Smith I, Docket No. 18 at p. 7 (D.S.D. April 7, 2011).  Mr. Smith's matter was remanded to the agency in September 2011.  On remand, for the first time, Mr. Smith sought to reopen his December 2002 application.  The time elapsed between January 20, 2005, and September 2011 is six years.  Thus, Mr. Smith did *not* request to have his December 2002 application reopened within four years of the decision denying benefits on that application.

Under the EAJA, a prevailing party in a civil suit against the United States or one of its agencies shall be awarded attorney's fees and costs. See 28 U.S.C. § 2412(a) and (d)(1)(A). However, if the court finds that the government's position was substantially justified, the court may choose not to make such an award. Id. at (d)(1)(A).

An application for fees and costs under the EAJA must be made "within thirty days of final judgment in the action." See 28 U.S.C. § 2412(d)(1)(B). By local rule, litigants seeking attorney's fees in this district must file a motion for attorney's fees within 28 calendar days after the entry of judgment, absent a showing of good cause. See DSD L.R. 54.1C. Here, the district judge entered final judgment in Mr. Smith's favor on September 11, 2014. See Smith II, Docket No. 30. Mr. Smith filed his motion for attorney's fees on November 20, 2014. See id. at Docket No. 31. This was fully one and a half months after the deadline for requesting attorney's fees under either the EAJA or this district's local rule. Mr. Smith does not acknowledge that his motion is untimely, nor does he offer any excuse constituting good cause for missing the filing deadline.

The 30-day deadline under the EAJA is not jurisdictional. See Scarborough v. Principi, 541 U.S. 401, 413-14 (2004). Although the Commissioner does object to the requested award of attorney's fees in this case, the objection is substantive, not procedural. The Commissioner does not urge this court to deny Mr. Smith's request on the grounds of untimeliness. A fellow district court in the Eighth Circuit has held that the 30-day time limit can be waived by the Commissioner by not raising the argument. See Vasquez v. Barnhart, 459 F. Supp. 2d 835, 836 (N.D. Iowa 2006). This court, too, finds that the 30-day requirement has been

6

waived by the Commissioner in Mr. Smith's case because it was not urged as grounds for denying the instant motion.

In order to avoid an award attorney's fees under the EAJA, the government's position must have been "substantially justified" at both the administrative level and at the district court level.  Kelly v. Bowen, 862 F.2d 1333, 1337 (8th Cir. 1988).  In determining whether the government's position was substantially justified, the court should examine whether that position had a clearly reasonable basis in fact and in law, "both at the time of the Secretary's decision and the action for judicial review."  Id.; Goad v. Barnhart, 398 F.3d 1021, 1025 (8th Cir. 2005).  The government's position can be factually and legally reasonable, "solid," even though that position turned out to be not necessarily correct.  Kelly, 862 F.2d at 1337.  A loss on the merits does not give rise to a presumption that the Commissioner's position was not substantially justified.  Goad, 398 F.3d at 1025. The Commissioner bears the burden of proving that its position was substantially justified.  Id.

The two primary issues presented both at the administrative level and before this court were:  (1) whether an award of benefits prior to January 20, 2005 was *res judicata* under administrative law and (2) whether the December, 2002 application should have been reopened.  Both of these issues presented close questions simply because Mr. Smith's last application for benefits and his first application for benefits alleged the same disabling conditions and the same date of onset.  Therefore, necessarily, the same evidence would be considered as to both applications.

1. **The Doctrine of *Res Judicata***

An ALJ may dismiss a hearing request entirely or refuse to consider a particular issue or issues if the doctrine of *res judicata* applies.  See 20 C.F.R. §§ 404.957(c)(1) and 416.1457(c)(1).  "Res judicata bars subsequent applications for [disability benefits] based on the same facts and issues the Commissioner previously found to be insufficient to prove the claimant was disabled."  Hillier v. Social Sec. Admin., 486 F.3d 359, 364 (8th Cir. 2007).  See also Bladow v. Apfel, 205 F.3d 356, 361 n.7 (8th Cir. 2000); Robbins v. Secretary of Health & Human Servs., 895 F.2d 1223, 1224 (8th Cir. 1990).  Res judicata precludes entirely a subsequent application for disability benefits if the claimant does not present "any new evidence that . . . [his] condition changed or deteriorated" since the denial of his previous application.  Hillier, 486 F.3d at 365 (citing Robbins, 895 F.2d at 1224).  "New evidence includes both facts and issues that differ from the facts and issues of concern at the prior proceeding, as well as evidence that was not part of the record in the prior proceeding."  Id. (citing Bladow, 205 F.3d at 361 n.8; Janka v. Sec. of Health, Educ. & Welfare, 589 F.2d 365, 367 (8th Cir. 1978)).  Evidence of a claimant's condition prior to the date of the determination of the earlier claim may be considered along with new evidence in order to determine if the claimant has become disabled since the ALJ's prior adverse determination.  Id.

*Res judicata* applies where an ALJ has refused to reopen a prior claim and has not reconsidered the merits of the earlier claim.  Robbins, 895 F.2d at 1224; Bladow, 205 F.3d at 361 n.7.  Where an ALJ has refused to reopen a prior application, medical records from the prior period can be received if they were not previously in the administrative record, but they serve only as a background for

8

new and additional evidence of physical or mental conditions occurring after the prior proceeding ended.  Hillier, 486 F.3d at 365. Robbins, 895 F.2d at 1224.

The Seventh Circuit, in a decision cited by the Hillier court, further elaborated on the doctrine of *res judicata* in the administrative appeal context:

> Res judicata bars attempts to relitigate the same claim, but a claim that one became disabled in 1990 is not the same as a claim that one became disabled in 1994.  What is true is that under the collateral estoppel branch of res judcata, the judgment denying the earlier claim may bar the relitigation of issues essential to the second claim as well.  But it need not, especially when the disabling condition is progressive; for in that event there is no necessary inconsistency in finding an applicant not disabled at time $t$ but disabled at $t + 1$.  There thus is no absolute bar to the admission in the second proceeding of evidence that had been introduced in the prior proceeding yet had not persuaded the agency to award benefits.  The "readmission" of that evidence is barred only if a finding entitled to collateral estoppel effect establishes that the evidence provides no support for the current claim.  That would be true if the earlier evidence had been found unworthy of belief. . . It still might reinforce or illuminate or fill gaps in the evidence developed for the second proceeding.

See Groves v. Apfel, 148 F.3d 809, 810-11 (7th Cir. 1998) (citations omitted).

In Jones v. Chater, 65 F.3d 102, 103 (8th Cir. 1995), a case relied upon by the district court, the claimant Jones was a Vietnam veteran who was last insured under the Social Security laws in 1975.  He was awarded a Purple Heart for his service, evacuated to Japan for treatment of his injuries, and then to the United States for discharge.  Id.  Jones realized in 1991 that he had been suffering from post-traumatic stress disorder ("PTSD"--a condition medical science did not recognize until the 1980s) since his Vietnam service and he applied for benefits. Id.  The administrative record reflected medical diagnoses that Jones suffered from PTSD and that Jones' condition stemmed from his time in Vietnam, but the medical records did not specifically address whether Jones was disabled as a

9

result of his PTSD as of the date he was last insured.  Id.  Jones' relatives had testified administratively that Jones' personality changed dramatically for the worse after his Vietnam service, going from productive and well-settled before his service, to "roaming, troubled, and reclusive" after his service.  Id.  The court held that retrospective medical diagnoses could not alone establish impairment in the past, but when those diagnoses are corroborated, then they can.  Id. at 104.  In Jones' case, the ALJ had received the retrospective medical evidence and the corroborating lay evidence from Jones' family, but the ALJ failed to discuss or comment on either.  Id.  The court held that remand was required in order to allow the ALJ to make initial determinations of fact and credibility.  Id.  Significantly, the Jones decision did **not** involve a prior application for disability benefits—so far as one can tell from the written opinion, Jones filed only one application.  Therefore, no considerations of *res judicata* entered into the court's analysis.

It appears from the record that the Commissioner's reliance on *res judicata* both at the agency level and at the district court level had a reasonable basis in fact and in law.  Mr. Smith argues that the fact that new evidence was introduced at the evidentiary hearing before the ALJ on remand is proof positive that *res judicata* does not apply.  This was also a basis for the district court's rejection of the application of *res judicata*.  However, as the above discussion of the law makes clear, the fact that new evidence was introduced is not inconsistent with the application of *res judicata*.  New evidence, even new evidence predating the prior denial of an application for disability benefits, is appropriate where the old evidence was (1) not previously in the administrative record and (2) sheds light on

the current condition which the claimant alleges is disabling. See Groves, 148 F.3d at 810-11; Robbins, 895 F.2d at 1224.

Mr. Smith points out that the defense of *res judicata* is waivable and argued that the ALJ waived the defense by considering all the evidence. As indicated above, it was incumbent on the ALJ to consider all the evidence placed into the record on Mr. Smith's most current application for benefits, even if some of that evidence predated the denial of his prior application. See Groves, 148 F.3d at 810-11; Robbins, 895 F.2d at 1224. The fact that the ALJ properly did so does not constitute an implicit waiver of the *res judicata* defense. In fact, the ALJ clearly and explicitly asserted that defense. See AR 405-06.

Given the facts in the record and the procedural posture of this case, this court concludes that the Commissioner's reliance on *res judicata* both at the administrative level and at the district court level was "substantially justified." The court next turns to the issue of reopening.

### 2. Reopening—Constructive or Otherwise

A prior determination denying a claimant benefits can be reopened within 12 months of the final decision for any reason. See 20 C.F.R. §§ 404.988 & 416.1488. A prior determination can also be reopened within four years of the prior decision denying benefits upon a showing of good cause if one of 11 enumerated factors are present. Id. Here, as stated above, Mr. Smith did not seek to reopen his December 2002 application when he first filed his April 18, 2006 application. Before this court, Mr. Smith was adamant that he had not asked to reopen in the prior administrative proceedings and he was not then asking the court in Smith I to reopen. See Smith I, Docket No. 18 at p.7. The first time Mr.

11

Smith asked to reopen his prior application was upon remand to the ALJ. This was at least six years after the January 20, 2005 denial of his December 2002 application. Thus, his request to reopen was not within the four-year window set forth in the above regulation.

The ALJ refused to reopen Mr. Smith's December 2002 application. See AR 405-06. The ALJ's decision appears to be a firmly correct interpretation of the regulations. See 20 C.F.R. §§ 404.988 & 416.1488. The prior decision denying benefits on Mr. Smith's December 2002 application was rendered on January 20, 2005. At the time the district court remanded this case back to the agency, September 2011, it had been more than four years since January 20, 2005. Therefore, neither the 12-month reopening provision nor the 4-year reopening provision described in the regulations would have applied. Id.

Normally, the Commissioner's decision not to reopen a claim for benefits is not subject to judicial review. Califano v. Sanders, 430 U.S. 99, 107-08 (1977). A district court has no subject matter jurisdiction to review a decision not to reopen a prior claim for benefits. Id.

Two exceptions to this rule exist: (1) where the claimant can assert a colorable claim that his constitutional rights have been violated by not reopening his claim or (2) where the Commissioner *de facto* reopens the claim ("constructively reopens") by reviewing the claim on the merits and rendering a decision. Davis v.Sullivan, 977 F.2d 419, 420 (8th Cir. 1992); Jelinek v. Heckler, 764 F.2d 507, 508-09 (8th Cir. 1985). Here, the allegation of a constitutional violation by Mr. Smith was weak, at best, and was rejected by both the magistrate judge and the district judge. The assertion that the Commissioner constructively

12

reopened Mr. Smith's December 2002 case was, however, accepted by the district court.

When an ALJ reconsiders an earlier claim on its merits, even though the ALJ states that he is not reopening the earlier claim, courts view this as a constructive reopening. Jelinek, 764 F.2d at 508-09. Under such circumstances, the district court may review the Commissioner's decision to the same extent that the ALJ reviewed it. Id. However, the cases distinguish between those cases, like Jelinek where the ALJ is really redetermining the prior claim, from those cases where evidence of disability predating the current application is considered for background purposes. See Hudson v. Bowen, 870 F.2d 1392, 1394-95 (8th Cir. 1989).

In the Hudson case, Hudson had filed a prior application for benefits in December 1980 claiming that he had been disabled since May 26, 1977. Id. at 1393. That application was denied and Hudson did not pursue further review. Id. Hudson then filed a second application four years later in December 1984, alleging the same disability and the same onset date. Id. In this second application, the ALJ held a hearing, but refused to reopen the 1980 application. Id. The ALJ also ruled against Hudson on his 1984 application. Id. Hudson exhausted his administrative remedies on this claim and pursued an administrative appeal to the district court. Id. The district court held that the ALJ, by considering all the evidence on the merits, had constructively reopened the case. Id. at 1393-94.

The Eighth Circuit reversed. Id. at 1394-95. The appellate court described as "narrow" the Jelinek constructive reopening exception to the nonreviewability of the Commissioner's decision not to reopen. Id. The fact that the ALJ reviewed all

13

of the evidence was not determinative of whether he constructively reopened. Id. at 1395. Rather, the Eighth Circuit pointed out, the ALJ was obligated to review of the whole of the evidence for two reasons: (1) to determine if there were grounds for reopening and (2) to evaluate the second application for benefits, which alleged the same onset date as the first. Id.

A similar case is Boock v. Shalala, 48 F.3d 348 (8th Cir. 1995). In that case, Boock had applied for benefits in 1983 and again in 1986, alleging in both applications that he became disabled in 1980 following a work-related chemical spill. Id. at 349. Boock did not pursue judicial review of either of these earlier applications. Id. at 350. Boock then filed a third application for benefits in 1988. Id. In evaluating his 1988 application, the ALJ found that Boock had been disabled since 1980 from conditions which included severe bipolar syndrome, depression and hypomania. Id. The ALJ accordingly granted Boock benefits retroactive to 1987, the maximum "look back" period allowed for retroactive award of benefits. Id. Boock asked the Commissioner to reopen his 1983 application for benefits, which the Commissioner denied. Id.

The district court dismissed Boock's action for lack of subject matter jurisdiction, citing to the fact that it had no jurisdiction to review a decision not to reopen. Id. at 350-51. Boock argued that, in reviewing his 1988 application, the ALJ had necessarily addressed the merits of his 1983 application and, thus, had constructively reopened his earlier application. Id. at 351. The Eighth Circuit rejected this argument. Id. The court clarified what "decision" Boock was asking it to review—*not* the fully favorable decision granting benefits back to 1987. Id.

Rather, Boock was asking the court to reverse the Commissioner's decision not to reopen.  Id. at 351-52.

In this case, as in Boock and Hudson, the ALJ did review medical records that predated his current application for benefits.  However, it is clear that, in doing so, the ALJ was focusing on whether Mr. Smith was disabled as of the date of his most recent application.  See AR 405-10.  This is similar to both Hudson and Boock in that Mr. Smith alleged the same date of onset of disability in his most recent application (March 2000) as the alleged date of onset of disability in his December 2002 application.  The evidence that the ALJ would necessarily have to review for the 2006 application would have to be the same evidence submitted in relation to the December 2002 application.  Both of Mr. Smith's applications alleged the same disability and the same onset date, with the exception that new additional evidence was submitted this time.

Finally, the court notes that Mr. Smith did not seek to reopen his earlier December 2002 application until his case was remanded to the ALJ by this court in September 2011.  Mr. Smith was adamant in his first appeal to this court that he was not seeking to reopen.  See Smith I, Docket No. 18 at p. 7.  Mr. Smith even urged this court to hold that it had no subject matter jurisdiction to review a decision not to reopen.  Id.

Finally, as in Boock, this court examines what "decision" from below it was asked to review in Smith II.  The ALJ issued a decision fully favorable to Mr. Smith *except* as to the issue of reopening and the intimately related issue of *res judicata*. See AR 405-10.  Therefore, the "decision" this court was asked to review was as to reopening and *res judicata.*  This court was *not* asked to review the fully favorable

15

portion of the ALJ's decision. Although reasonable minds might differ as to the outcome of the issues of *res judicata* and constructive reopening on legal grounds, reasonable minds could not conclude that the Commissioner was without "substantial justification" in arguing those grounds.

## CONCLUSION

Based on the foregoing law, facts, procedural history and analysis, this court concludes that the Commissioner's position both in administrative proceedings and before this court was "substantially justified." Accordingly, this court recommends that Mr. Smith's motion for attorney's fees and costs under the EAJA [Docket No. 31] be denied.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 15th day of April, 2015.

BY THE COURT:

_/s/ Veronica L. Duffy_
VERONICA L. DUFFY
United States Magistrate Judge

16